963 So.2d 328 (2007)
Michael ROGERS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-3965.
District Court of Appeal of Florida, Second District.
August 17, 2007.
*329 James Marion Moorman, Public Defender, and Julius J. Aulisio, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
*330 CANADY, Judge.
Michael Rogers appeals his conviction and sentence for lewd and lascivious battery. We affirm Rogers' conviction without comment, and we affirm his sentence for the reasons we explain.

I. Background

Rogers was charged with lewd and lascivious battery on a child under sixteen, a felony of the second degree, see § 800.04(4)(a), Fla. Stat. (2003), subject to a statutory maximum prison sentence of 15 years, see § 775.082(3)(c), Fla. Stat (2003). The information alleged that Rogers had the "victim place her hand and then her mouth on his penis." The jury convicted Rogers as charged. The jury's verdict contained a specific finding that there was "sexual penetration." Rogers' Criminal Punishment Code scoresheet reflected 80 victim injury points for penetration. The lowest permissible prison sentence shown on the scoresheet was 94.6 months. The trial court sentenced Rogers to that minimum prison sentence followed by 5 years' probation.
On appeal, Rogers argues that because the information did not allege penetration, the trial court erred in including the issue of penetration on the verdict form and in scoring 80 penetration points on the sentencing scoresheet. In support of his argument, Rogers relies on this court's decision in Whalen v. State, 895 So.2d 1222 (Fla. 2d DCA 2005).
The State responds that Rogers did not file a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). The State also claims that the trial court's failure to have the jury decide the penetration issue would have violated Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The State does not address the merits of Rogers' claim that the omission of an allegation of penetration in the information precluded the assessment of points for penetration on the sentencing scoresheet.

II. Analysis

In our analysis, we first explain our conclusion that the issue raised by Rogers was not adequately preserved. We also present the conclusion that even if the asserted error had been preserved, Rogers' reliance on Whalen is misplaced.

A. Preservation

We conclude that the issue raised by Rogers concerning the penetration points was not adequately preserved under the requirements of Florida Rule of Appellate Procedure 9.140(e). At trial, the State argued that the verdict form should include a question regarding penetration but defense counsel argued that because the information did not allege penetration, such a question should not be included on the verdict form. In the sentencing proceedings, however, the defense offered no objection to the assessment of the points for sexual penetration. Rule 9.140(e) provides that a claim of "sentencing error" may be raised on appeal only if the "alleged error" was "first . . . brought to the attention" of the sentencing court either "at the time of sentencing" or by way of a Florida Rule of Criminal Procedure 3.800(b) motion. Here, the objection to the verdict form was not an objection raised "at the time of sentencing" and Rogers filed no 3.800(b) motion.

B. The Assessment of Victim Injury Points

In considering the merits of Rogers' claim, we begin with a general discussion of the basis for the assessment of victim injury points and the principle that points may be assessed for victim injury that is *331 not an element of the crime charged. From that principle, we turn to a discussion of the constitutional requirement that a charging instrument allege all the elements of the crime charged. We then consider the implications that Apprendi and its progeny have for determining what constitutes an element of an offense which must be alleged in the charging instrument. We explain our reading of Whalen in light of the reasoning of Apprendi and its progeny. Finally, we conclude that penetration was not an element or the functional equivalent of an element of the offense charged against Rogers and accordingly was not required to be alleged in the information.

1. The Basis for Victim Injury Points

Section 921.0021(7), Florida Statutes (2003), provides the definition of victim injury that governs the assessment of victim injury points on Criminal Punishment Code scoresheets. See also Fla. R.Crim. P. 3.704(d)(9). The statute sets forth the basic definition of victim injury as "the physical injury or death suffered by a person as a direct result of the primary offense, or any additional offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense." § 921.0021(7)(a) (emphasis added).
The statute contains additional provisions with respect to offenses "involving sexual contact." § 921.0021(7)(b). In pertinent part, the statute provides that where "the conviction is for an offense involving sexual contact that includes sexual penetration, the sexual penetration must be scored in accordance with the sentence points provided under s. 921.0024 for sexual penetration, regardless of whether there is evidence of any physical injury." § 921.0021(7)(b)(1) (emphasis added). (The Criminal Punishment Code worksheet set forth in section 921.0024(1)(a) provides 80 sentence points for sexual penetration.)
Under these statutory provisions, the assessment of penetration points is not limited to circumstances where penetration was an element specifically charged in the information. An offense can be one "involving sexual contact that includes sexual penetration" regardless of whether penetration was an element of the offense alleged in the information. § 921.0021(7)(b)(1).
The specific provisions of the statute relating to offenses "involving sexual contact that includes sexual penetration" must be read in the context of the basic definitional provision which permits the assessment of points for victim injury suffered "as a direct result" of an offense for which the defendant is convicted. The use of the words "involving" and "as a direct result" in the pertinent statutory provisions indicates that an injury or act of sexual penetration is a basis for the assessment of victim injury points whenever the injury or act of sexual penetration takes place in the course of or in connection with the commission of the offense for which the defendant is convicted. See Geary v. State, 675 So.2d 625, 626 (Fla. 2d DCA 1996) (recognizing that the assessment of victim injury points depends on "whether the victim's injury was a direct result of the defendant's crimes").
This reading of the statute is supported by the history of the assessment of victim injury points under the sentencing guidelines. The 1985 version of Florida Rule of Criminal Procedure 3.701(d)(7) provided that "[v]ictim injury shall be scored if it is an element of any offenses at conviction." See The Fla. Bar: Amendment to Rules of Criminal Procedure (3.701, 3.988Sentencing Guidelines), 451 So.2d 824, 826 (Fla.1984). Subsequently, that provision was amended and the 1988 version of rule *332 3.701(d)(7) provided that "[v]ictim injury shall be scored for each victim physically injured during a criminal episode or transaction." See Fla. Rules of Criminal Procedure Re Sentencing Guidelines (Rules 3.701 & 3.988), 509 So.2d 1088, 1089 (Fla. 1987). In approving this change, the court observed: "We see merit in scoring physical injury if a defendant physically injures the victim of the offense during the course of a criminal episode, regardless of whether the injury is an element of the crime." Id. The requirement that victim injury be an element of the offense was thus removed. Although various refinements of the provisions governing the assessment of victim injury points have been adopted over the course of time, none of those refinements has reintroducedeither explicitly or implicitlythe earlier requirement that the victim injury be an element of the crime.

2. The Required Content of an Information

An information "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fla. R.Crim. P. 3.140(b). "The purpose of an information is to fairly apprise [the] defendant of the offense with which he is charged." Leeman v. State, 357 So.2d 703, 705 (Fla.1978). "An information must allege each of the essential elements of a crime to be valid." State v. Dye, 346 So.2d 538, 541 (Fla.1977). "[D]ue process prohibits a defendant from being convicted of a crime not charged in the information or indictment." Crain v. State, 894 So.2d 59, 69 (Fla.2004).
The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." See also art. I, § 16(a), Fla. Const. ("In all criminal prosecutions the accused shall, upon demand, be informed of the nature and cause of the accusation. . . ."). The Sixth Amendment's notice guarantee is by virtue of the Fourteenth Amendment's due process clauseapplicable to state prosecutions. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948). This right of a defendant "to reasonable notice of a charge against him," In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948), "contemplates that the accused be . . . informed [of the nature and cause of the accusation] sufficiently in advance of trial or sentence to enable him to determine the nature of the plea to be entered and to prepare his defense if one is to be made," id. at 279 n. 1, 68 S.Ct. 499 (Rutledge, J., concurring). "In order for an accusation of a crime (whether by indictment or some other form) to be proper under the common law, and thus proper under the codification of the common-law rights in the Fifth and Sixth Amendments, it must allege all elements of that crime. . . ." Apprendi, 530 U.S. at 500, 120 S.Ct. 2348 (Thomas, J., concurring).
"[T]he legislature is vested"subject to constitutional limitations discussed below"with the authority to define the elements of a crime." Chicone v. State, 684 So.2d 736, 741 (Fla.1996) Accordingly, the identification of the elements of a crime which must be charged in an information is at least initially a "question of legislative intent." Id.

3. The Elements of an Offense Under Apprendi and Its Progeny

Considerable attention has been given to "the distinction the law has drawn between *333 the elements of a crime and factors that influence a criminal sentence." Harris v. United States, 536 U.S. 545, 549, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). Since the Supreme Court decided Apprendi in 2000, the Court has repeatedly considered the implications of this distinction. See Cunningham v. California, ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007); United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); Blakely, 542 U.S. 296, 124 S.Ct. 2531; Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); Harris, 536 U.S. 545, 122 S.Ct. 2406. In these cases dealing with the Sixth Amendment's jury trial guarantee, the "Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." Cunningham, 127 S.Ct. at 863-64.
Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." 530 U.S. at 490, 120 S.Ct. 2348. The Apprendi Court recognized "that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crimeand thus the domain of the juryby those who framed the Bill of Rights." Harris, 536 U.S. at 557, 122 S.Ct. 2406 (plurality opinion) (emphasis supplied); see also Sattazahn v. Pennsylvania, 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (plurality opinion) ("Put simply [under Apprendi], if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that factno matter how the State labels itconstitutes an element, and must be found by a jury beyond a reasonable doubt." (Emphasis supplied.))
The Apprendi Court thus distinguished between sentencing factors that do not require a jury finding and those facts which must be treated as an element of the crime:
The term ["sentencing factor"] appropriately describes a circumstance . . . that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentencing enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.
Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348.
"When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' . . . and the judge exceeds his proper authority." Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (quoting 1 J. Bishop, Criminal Procedure § 87, at 55 (2d ed. 1872)). Blakely, Booker, and Cunningham "hold that under a guidelines sentencing scheme which restricts judicial discretion in imposing sentences, the factors used to calculate the maximum guidelines sentence to which a defendant is exposed must be based either on (1) findings made by the jury, (2) facts admitted by the defendant, or (3) the defendant's prior convictions." Behl v. State, 898 So.2d 217, 221 (Fla. 2d DCA 2005).
Apprendi and its progeny have implications for the content of indictments and informations. Although it was not presented *334 with a challenge to the charging instrument, the Court in Apprendi recognized these implications:
[We noted in Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)] that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." The Fourteenth Amendment commands the same answer in this case involving a state statute.
530 U.S. at 476, 120 S.Ct. 2348 (emphasis added) (citation omitted); see also United States v. Cotton, 535 U.S. 625, 627, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (stating that "[i]n federal prosecutions" facts which must be submitted to a jury under reasoning of Apprendi "must also be charged in the indictment").[1]
The conclusion that a fact should be treated as an element which must be found by the jury suggests that the same fact should be treated as an element to be alleged in the charging instrument in order to satisfy the notice guarantee of the Sixth Amendment. See United States v. Jackson, 327 F.3d 273, 285 (4th Cir.2003) (recognizing "symmetry between indictment and fact finding" and stating that "[i]t is no doubt true, as a general principle, that the Fifth Amendment right to be charged by an indictment containing every element of the offense is no less demanding than the Sixth Amendment right to have every element of the offense found by the jury"). Conversely, the conclusion that a fact need not be treated as an element required to be found by the jury suggests that the same fact need not be treated as an element that is required to be alleged in the charging instrument. See Harris, 536 U.S. at 568, 122 S.Ct. 2406 (stating that factor increasing a defendant's minimum sentence "need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt").
The symmetry between charging and fact finding suggested by Apprendi has not been universally embraced. Some courts have concluded that the notice guarantee of the Sixth Amendment may be satisfied with respect to a fact that is an element under Apprendi by means other than an allegation in the charging instrument. See, e.g., State v. Nichols, 201 Ariz. 234, 33 P.3d 1172, 1176 (Ariz.Ct.App.2001) (holding that facts related to commission of offense necessary to establish eligibility for enhanced penalty of life imprisonment "need not be alleged in the charging document provided that the notice of them given [to] the defendant comports with Arizona's traditional notice requirements for alleging sentence enhancements"). But other courts have followed the line of reasoning suggested by Apprendi. See, e.g., State v. Simuel, 357 S.C. 378, 593 S.E.2d 178, 180 (S.C.Ct.App.2004) (holding that requirements of Apprendi were not met where facts on which sentence enhancement was based were not charged and submitted to the jury).
It remains trueand of salient significance for the instant casethat "not all facts affecting the defendant's punishment are elements," Harris, 536 U.S. at 549, 122 S.Ct. 2406, and therefore that not "every fact with a bearing on sentencing must be found by a jury," Jones, 526 U.S. at 248, *335 119 S.Ct. 1215, or alleged in the charging instrument.
In a charging instrument, it is only necessary under the reasoning suggested by Apprendi that "the charged facts" make defendants "aware of the `heaviest punishment' they face if convicted." Harris, 536 U.S. at 562, 122 S.Ct. 2406 (quoting Bishop, Criminal Procedure § 85, at 54). In imposing sentences, judges may consider "uncharged `aggravating circumstances' that, while increasing the defendant's punishment, have not `swell[ed] the penalty above what the law has provided for the acts charged.'" Id.[2] (alteration in original).

4. Whalen

The defendant relies on our decision in Whalen in support of his argument that sexual penetration points can be assessed only if penetration is alleged in the information. Whalen held that the assessment of sex penetration points which resulted in a sentence exceeding the statutory maximum was improper both because penetration was not alleged in the information and because the jury made no finding of penetration. 895 So.2d at 1225. We acknowledge that Whalen might be read to support the defendant's position here. But Whalen contains no express holding that the factual basis for victim injury points must always be alleged in the charging instrument. And Whalen provides no direct explanation for its conclusion that an allegation of penetration was required in the information. We conclude that the decision in Whalen is properly viewed in light of Apprendi's suggested symmetry between the facts which must be alleged in the charging instrument and the facts which must be found by the jury. Accordingly, we reject Rogers' contention that Whalen imposes an absolute requirement that penetration be alleged in the information in order for penetration points to be assessed against a defendant.
Whalen recognized that "but for the scoring of the penetration points, the trial court could not have imposed" the defendant's sentences. Id. Based on this circumstance, the court concluded that Blakely "preclud[ed] the assessment of penetration points since the jury did not make specific findings of penetration." Id. Although the point is not articulated, it is most reasonable to read Whalen's conclusion concerning the insufficiency of the information as being basedlike the insufficiency of the jury findingson the circumstance that the sentences imposed on the defendant exceeded the otherwise applicable statutory maximum.
Whalen, 895 So.2d at 1224, made reference to Bryant v. State, 744 So.2d 1225 (Fla. 4th DCA 1999), which held that imposition of a 3-year mandatory minimum term under section 775.087(2), Florida Statutes (1997), for use of a firearm was improper because the information did not allege that the charged offense was committed with a firearm. By referring to Bryant, Whalen arguably suggests that the assessment of victim injury points is always analogous to the imposition of a minimum mandatory sentence under section 775.087(2). But we do not adopt that view of Whalen. The factors relevant to sentencing under various versions of section 775.087(2) have been treated as "essential elements." Jackson v. State, 852 So.2d 941, 943 (Fla. 4th DCA 2003); see also Davis v. State, 884 So.2d 1058, 1060 (Fla. 2d DCA 2004) ("[T]he minimum terms mandated by the '10-20-Life' Statute, section 775.087(2), cannot be legally *336 imposed unless the statutory elements are precisely charged in the information."). The analogy between Whalen and Bryant consists in the circumstance that both cases involved a sentencing factor that was required to be treated as an element. The factor at issue in Bryant is always required to be treated as an element. The factor at issue in Whalen is required to be treated as an element when it results in a sentence exceeding the statutory maximum.[3]

5. The Present Case

Here, the prison sentence imposed on Rogersless than 8 yearswas within the statutory maximum of 15 years.[4] Although the jury made a specific finding of penetration, such a finding by the jury was not constitutionally required under the reasoning of Apprendi and its progeny. Under the reasoning of those cases, penetration was not an element of or the functional equivalent of an element of the crime charged against Rogers. Penetration was a circumstance which supported the imposition of a sentence "within the range" applicable to the charged crime and "authorized by the jury finding" that the defendant was guilty of the charged crime-even without a jury's finding of penetration. Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348. Accordingly, penetration was neither required to be found by the jury nor required to be alleged in the information.
This case is controlled by the rule that where the victim injury which is the basis for the assessment of sentencing points is not an elementor the functional equivalent of an elementof the offense and thus not part of the essential facts constituting the offense charged, the victim injury need not be alleged in the information. But see Delgado v. State, 948 So.2d 883, 884 (Fla. 3d DCA 2007) (holding that assessment of victim injury points was improper because the information did not allege the factual basis for the victim injury points).
This view is supported by the decision in Ladd v. State, 715 So.2d 1012 (Fla. 1st DCA 1998), where the court held that victim injury points for penetration were properly assessed although penetration was not an element of the offenses for which the defendant was convicted. In Ladd, the convicted offenses were using a child in a sexual performance, promoting a sexual performance by a child, and attempted possession of a videotape depicting a sexual performance by a child. Id. at 1013. A videotape showed the defendant and the childhis girlfriend"engaged in sexual intercourse involving actual sexual penetration." Id. at 1016.
The Ladd court reasoned that because the offense of using a child in a sexual performance and promoting a sexual performance by a child could involve sexual intercourse, "it is clear that sexual penetration (and, thus, victim injury) can be a direct result of [those] offense[s]." Id. Accordingly, the court upheld the trial court's assessment of points for penetration even though the information had *337 not alleged penetration.[5]

III. Conclusion

Rogers' judgment and sentence are affirmed.
CASANUEVA and SILBERMAN, JJ., Concur.
NOTES
[1] The Fifth Amendment's grand jury guarantee does not apply to the States. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884).
[2] To the extent that the reasoning of Apprendi is applied in determining what a charging document must allege, the Apprendi exception for the defendant's prior convictions must also be kept in view.
[3] To the extent that the Florida case law requires that the factual basis for imposition of a mandatory minimum term under section 775.087(2) always be charged and found by the jury, it reflects a judicial conclusion that the legislature intended the factors requiring imposition of a mandatory minimum under section 775.087(2) to be essential elements.
[4] Under the Criminal Punishment Code, Rogers' sentence could only exceed the statutory maximumand would be required to exceed the statutory maximum absent a downward departure  if his scoresheet reflected a "lowest permissible sentence . . . exceed[ing] the statutory maximum sentence." § 921.0024(2), Fla. Stat. (2003).
[5] In McMillan v. State, 896 So.2d 873 (Fla. 2d DCA 2005), we distinguished Ladd. The defendant in McMillan "was shown to have directed the videotaping of a sexual performance involving a sixteen-year-old girl engaging in sexual acts with another individual." 896 So.2d at 874. We accepted the defendant's argument that Ladd was "distinguishable because in that case the defendant himself engaged in sexual intercourse with the minor child." Id. We therefore concluded that because the defendant in McMillan had not himself engaged in intercourse with the child, "the physical injury suffered by the child was not a direct result of the offense." Id. at 875.